**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BRIAN E. SEEBAUER;<br>GUN BARREL COFFEE, INC.<br><br>Plaintiffs,<br><br>v.<br><br>HANX COFFEE COMPANY LLC d/b/a HANKS FOR OUR TROOPS; HANX WORX LLC<br>Defendants. | Case No. 1:26-cv-14581<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Now comes Plaintiffs, BRIAN E. SEEBAUER and GUN BARREL COFFEE, INC., by and through its attorneys, Niro Law Firm, state as follows:

## NATURE OF THE CASE

1. This is a complaint in a civil action seeking damages and injunctive relief for infringement under (1) the Lanham Act, 15 U.S.C. §1114, (2) the Lanham Act, 15 U.S.C. § 1125, and (3) common law trademark infringement and unfair competition under Illinois Law.

## PARTIES

2. Plaintiff Brian Seebauer is the owner of the trademark DAMN GOOD COFFEE DAMN GOOD CAUSE ® (the "Coffee Trademark").

3. Plaintiff Gun Barrel Coffee, Inc. ("Gun Barrel Coffee") is an Illinois corporation, with a place of business at 411 Stevens St., Geneva, IL 60134. Gun Barrel Coffee is engaged in the business of selling coffee products and supporting charitable initiatives benefiting veterans, first responders, and other related charities. Gun Barrel Coffee is the exclusive licensee of the Coffee Trademark.

4. Defendant Hanx Coffee Company LLC is a Delaware limited liability company that does business as Hanks For Our Troops with a registered agent for service of process at Cogency Global Inc., 850 New Burton Road, Suite 201, Dover, DE 19904 and a listed principal address at 9100 Wilshire Blvd., Suite 1000W, Beverly Hills, CA 90212.

5. Defendant Hanx Worx LLC is a Delaware limited liability company that owns various trademarks, including HANX and HANKS FOR OUR TROOPS. Exhibit A. Defendant Hanx Worx LLC has a registered agent for service of process at National Registered Agents, Inc., 1209 Orange Street, Wilmington, DE 19801 and a listed owner address in the United States Patent and Trademark Office registrations at 9100 Wilshire Blvd., Suite 1000W, Beverly Hills, CA 90212. Upon information and belief, Defendant Hanx Worx LLC licensed its trademarks to Defendant Hanx Coffee Company LLC for the nationwide manufacture, marketing, distribution, and sale of Hanks For Our Troops products—including sales into this jurisdiction—while retaining and exercising quality-control, approval, and oversight authority over the products, packaging, and marketing bearing its marks, and acting in concert with Defendant Hanx Coffee Company LLC as part of a common enterprise to bring the products to market.

## JURISDICTION AND VENUE

6. This court has exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S. Code § 1331 and § 1338(a).

7. This Court has supplemental jurisdiction over Plaintiffs' related Illinois state-law claims pursuant to 28 U.S.C. § 1367(a), and jurisdiction under 28 U.S.C. § 1338(b), because those claims arise from the same acts of alleged trademark infringement and unfair competition.

8. This Court has specific personal jurisdiction over Defendants because, as discussed below, Defendants have purposefully established commercial contacts with Illinois by marketing, distributing, offering for sale, and selling its coffee products to Illinois consumers and third-party

distributers with store front locations in Illinois. Plaintiffs' claims arise out of or relate to Defendants' commercial activities in Illinois, and exercising jurisdiction comports with traditional notions of fair play and substantial justice.

9. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2).

## COMMON FACTS TO ALL COUNTS

### A. Background and Founding of Gun Barrel Coffee

10. Gun Barrel Coffee was founded by Plaintiff Brian E. Seebauer ("Seebauer") and Salvatore Dazzo ("Dazzo") out of their shared commitment to supporting United States military veterans and their families, particularly disabled veterans and those experiencing difficulties obtaining necessary benefits and assistance following their military service.

11. Seebauer and Dazzo have known each other since childhood. Their longstanding friendship and personal experiences with the veteran community ultimately inspired them to establish a business that would generate financial support for organizations dedicated to assisting United States military veterans and their families.

12. Seebauer's father was a disabled veteran of the Vietnam War who experienced significant health complications associated with his military service, including consequences of exposure to Agent Orange. During his father's extended stays at Hines VA Hospital, Seebauer personally witnessed the physical, emotional, and financial difficulties often experienced by veterans and their families, including the challenges many faced in obtaining necessary benefits and medical care.

13. Dazzo served in the United States Army and was deployed during the Iraq War. Following his military service, Dazzo experienced difficulties navigating the veterans' benefits system and continued to experience health-related consequences associated with his service.

14. Through their personal experiences and discussions concerning the challenges facing

veterans, Seebauer and Dazzo developed the idea of establishing a business that would sell coffee products while generating financial contributions for organizations dedicated to supporting United States military veterans.

15. Coffee was a natural choice for the business because both founders had familial experience with coffee roasting. Seebauer's grandfather, for example, roasted his own coffee using a homemade device over a barbeque grill.

16. The name "Gun Barrel Coffee" was inspired by a story Seebauer's father told him about preparing coffee in the field during his military service using water, ground coffee beans, and his rifle. His father referred to the resulting coffee as "Gun Barrel Coffee" and proclaimed that it was "damn good!"

17. In 2017, Seebauer and Dazzo began commercially using the Gun Barrel Coffee name. To develop their business, they attended a coffee trade show at Navy Pier in Chicago, Illinois, where they learned about coffee roasting, packaging, labeling, and equipment.

18. Seebauer and Dazzo established their initial coffee-roasting operation in the three-season room of Dazzo's home. They personally roasted coffee, packaged orders, and sold their products to friends, family, and customers reached through social media.

19. From its inception, Gun Barrel Coffee was intended to be more than a commercial coffee business. Its founders sought to create a business through which the sale of coffee products would provide financial support to charitable organizations serving veterans.

**B. Development of DAMN GOOD COFFEE DAMN GOOD CAUSE®**

20. As Gun Barrel Coffee began selling its products, Seebauer and Dazzo sought to develop a unique, distinctive, and source-identifying slogan.

21. The founders initially considered and used different variations of a slogan, including "D@mn Good Coffee, D@mn Good Cause," before ultimately adopting "DAMN GOOD COFFEE DAMN GOOD CAUSE."

22. Plaintiffs began using the Coffee Trademark in connection with the marketing and sale of Gun Barrel Coffee products, including on product packaging, promotional materials, advertising, and other commercial communications.

23. As Gun Barrel Coffee expanded, Seebauer and Dazzo promoted the business through trade shows, craft fairs, festivals, and other events, where they marketed their coffee products directly to consumers and developed relationships with customers and charitable organizations throughout the United States.

24. As part of Gun Barrel Coffee's charitable mission, the business committed to donating $1 from each item purchased to organizations supporting veterans. This commitment continued even during periods when the business operated at a financial loss.

25. Gun Barrel Coffee developed relationships with organizations dedicated to assisting veterans and made charitable contributions generated through the sale of its coffee products. The founders also invited representatives of selected charitable organizations to receive donation checks and discuss the positive impact of those contributions.

26. Through Plaintiffs continued commercial use, promotion, and charitable initiatives, the Coffee Trademark became associated with Gun Barrel Coffee's coffee products and its commitment to supporting veterans. The relevant consuming public has come to associate the Coffee Trademark with Gun Barrel Coffee and the high quality of its services and coffee products.

27. Seebauer currently retains ownership of the Coffee Trademark and exclusively licenses its use to Gun Barrel Coffee, allowing the company to continue using the Coffee Trademark in connection with its coffee products, advertising, marketing, and charitable initiatives.

28. The Coffee Trademark and its associated goodwill reflect the history, commercial activities, and charitable mission developed by Seebauer and Dazzo.

**C. Plaintiffs' Registered Trademark and Prior Use**

29. Brian E. Seebauer is the sole owner of the United States Trademark, No. 6399728, DAMN GOOD COFFEE DAMN GOOD CAUSE ®.

30. Seebauer filed the application for the Coffee Trademark on April 24, 2020, and the USPTO registered the mark on June 29, 2021.

31. The registration covers coffee and related coffee products.

32. The Coffee Trademark is a standard-character mark, and its registration is not limited to a particular font, stylization, or design.

33. The Coffee Trademark's first date of use in commerce is February 11, 2018.

34. Plaintiffs used the Coffee Trademark in connection with the marketing and sale of coffee products associated with Gun Barrel Coffee throughout the United States.

35. Through their longstanding exclusive use of the Coffee Trademark in connection with coffee products, Plaintiffs developed substantial goodwill and secondary meaning associated with the mark.

36. Plaintiffs have never approved or authorized Defendants to use the Coffee Trademark or any confusingly similar designation.

37. Plaintiffs have continuously used the Coffee Trademark in commerce for over five (5) consecutive years, and the Coffee Trademark remains in use in commerce. The Coffee Trademark has attained incontestable status pursuant to 15 U.S.C. § 1065.

38. A copy of the Coffee Trademark's incontestable federal registration is attached as Exhibit B.

**D. Gun Barrel Coffee's Business and Commercial Use**

39. Gun Barrel Coffee has the exclusive license to use the Coffee Trademark.

40. Gun Barrel Coffee markets and sells coffee products, including coffee beans, ground coffee, and other coffee-related products throughout the United States.

41. Gun Barrel Coffee advertises its products through its website and social media accounts.

42. Gun Barrel Coffee also promotes its support of veterans, first responders, and related charitable causes as part of its business activities.

43. Plaintiffs' use of the Coffee Trademark is associated with this coffee business and its charitable-support messaging.

44. The Coffee Trademark is used as a source identifier, to identify Plaintiffs and promote their coffee products and to distinguish those products from competing offerings.

45. Plaintiffs' Coffee Trademark obtained secondary meaning and was federally registered well before Defendants' first use of the slogan.

**E. Defendants Use of the Accused Mark**

46. Defendants market and sell coffee products under the Hanks For Our Troops Brand, which was created by renowned, mega-star actor Tom Hanks in 2022. Exhibit C.

47. Defendants first adopted and began commercially using the slogan "Damn Good Coffee Damn Good Cause" or substantially similar variations (collectively, the "Accused Mark") between September 2024 and August 2025. Exhibit D.

48. The wording of Defendants' Accused Mark is identical to the wording of Plaintiffs' Coffee Trademark.

49. Defendants' use the Accused Mark in advertising, promotional materials, and packaging for their coffee products in the United States.

50. Defendants' coffee products compete directly with coffee products sold in connection with Plaintiffs' Coffee Trademark.

51. Both parties' products are directed toward the same consuming public and same customer base.

52. Both parties' products promote charitable support for United States Military veterans and their families.

53. Defendants' use of the Accused Mark occurs in a commercial context substantially similar to Plaintiffs' use of the Coffee Trademark.

54. Defendants' use of the Accused Mark is likely to cause confusion among consumers as to the source, sponsorship or affiliation between Defendants' coffee products and Plaintiffs.

55. Defendants' use of the Accused Mark is without Plaintiffs' authorization or consent.

56. Defendants intentionally adopted and used the Accused Mark in connection with the advertising, promotion, distribution, and sale of their coffee products in the United States and in this judicial district, with reckless disregard of Plaintiffs' rights in the Coffee Trademark, upon information and belief.

57. Upon information and belief, Defendants adopted and continued using the Accused Mark with full knowledge of Plaintiffs' prior trademark rights, including a substantial risk that their use infringed those rights.

58. Defendants' infringement of Plaintiffs' Coffee Trademark has therefore been intentional and willful.

**F. Defendants' Sales and Distribution in Illinois**

59. Defendants market and distribute their coffee products through national retail channels that include Walmart, 7-Eleven, and Speedway. Exhibit E.

60. Defendants' publicly available store locator identifies retail locations throughout

Illinois. Exhibit F.

61. Plaintiffs have identified more than 60 Illinois retail locations listed as carrying Defendants' coffee products. Several of these locations are located within the Northern District of Illinois.

62. Upon information and belief, Defendants knowingly supplies or participates in supplying their coffee products to Illinois retailers. Defendants' coffee products bearing the Accused Trademark are currently sold, for example, at the Union League Club of Chicago, Café One, located at 65 W. Jackson Blvd., Chicago, Il 60604, as shown below:




63. Defendants' coffee products marketed through Walmart include packaging displaying the Accused Mark. Exhibit G.

64. Defendants' website markets with the Accused Mark. Exhibit H.

65. Defendants have distributed or authorized the distribution of products bearing the Accused Mark into Illinois, including this District.

66. The distribution and sale of products bearing the Accused Mark in Illinois are directly related to the trademark infringement alleged in this action.

67. Defendants have willfully infringed upon Plaintiffs' Coffee Trademark in Illinois and throughout the United States.

**E. Likelihood of Confusion and Injury**

68. Plaintiffs' Coffee Trademark and Defendants' Accused Mark contain the identical words in the same order.

69. Both marks are used in commerce in connection with the same goods—coffee products.

70. Both parties' marketing also shares a charitable-support theme involving military veterans and their families.

71. The similarity of the marks, identity of the goods and services, and overlap in commercial context create a strong likelihood of consumer confusion regarding source, sponsorship, affiliation, or approval.

72. Defendants' use of the Accused Mark is likely to cause initial interest and forward confusion by leading consumers to mistakenly believe that Defendants' coffee products originate with, are sponsored by, are affiliated with, or are otherwise authorized or approved by Plaintiffs.

73. Defendants market and distribute their coffee products through substantial retail channels, including national retail chains and numerous retail locations throughout Illinois.

74. Defendants possess substantially greater commercial reach and promotional exposure than Plaintiffs through their retail distribution network, online marketing, and promotional activities associated with the Hanks For Our Troops brand, particularly given their association with the ultra-famous actor Tom Hanks.

75. Through their advertising, online marketing, retail distribution, and other promotional activities, Defendants have the ability to expose a substantial number of consumers to the Accused Mark in connection with coffee products and veteran-related charitable initiatives.

76. As a result of Defendants' subsequent use and promotion of the identical marks, consumers encountering Plaintiffs' Coffee Trademark are likely to mistakenly associate Plaintiffs'

products with Defendants rather than with Gun Barrel Coffee, the senior commercial user. This therefore creates a likelihood of reverse confusion by threatening to overwhelm consumers' association of the Coffee Trademark with Plaintiffs as the senior users of the mark.

77. Such reverse confusion threatens Plaintiffs' ability to maintain control over the identity, reputation, and goodwill associated with the Coffee Trademark, distinguish Gun Barrel Coffee's products and charitable mission from those of Defendants', and expand their business and charitable relationships without consumers mistakenly attributing Plaintiffs' activities to Defendants. There is also a likelihood that consumers will mistakenly believe that Plaintiffs copied and infringe upon Defendants' Accused Mark, under the false impression that Defendants are the senior user of the Coffee Trademark.

78. Defendants' use of the Accused Mark is likely to cause confusion, mistake, or deception concerning the origin, sponsorship, affiliation, or association of Plaintiffs' goods and services, including by causing consumers to believe that Plaintiffs' products and charitable activities are connected with Defendants.

79. Defendants' conduct has caused, or is likely to cause, injury to Plaintiffs' trademark rights and associated goodwill.

80. Plaintiffs' have suffered actual injury and monetary damages in an amount to be determined through discovery and at trial.

81. Unless restrained, Defendants are likely to continue using the Accused Mark in connection with their business and coffee products.

**COUNT I — FEDERAL REGISTERED TRADEMARK INFRINGEMENT**
**15 U.S.C § 1114**

Under the Lanham Act, section 32, 15 U.S.C. § 1114,

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a

> registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
> . . .

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

82. Plaintiffs repeat and reallege paragraphs 1–81 as though fully restated herein.

83. Plaintiffs own and have the exclusive right to use the Coffee Trademark.

84. The Coffee Trademark is valid, enforceable and incontestable.

85. Defendants have used the Accused Mark in interstate commerce in connection with the advertising, promotion, distribution, offering for sale, and sale of coffee products. An example of the Accused Mark is shown below.




https://givehanks.com/products/medium-roast-12-oz

86. Defendants' use of the Accused Mark is unauthorized.

87. Defendants' Accused Mark reproduces the exact wording of Plaintiffs' Coffee Trademark. The marks are identical.

88. Defendants use the Accused Mark on goods that are identical or closely related to the goods identified in Plaintiffs' registration and business.

89. Defendants' use is likely to cause forward and/or reverse confusion, mistake, or deception concerning the origin, sponsorship, affiliation, or approval of the parties' coffee products.

90. Upon information and belief, Defendants intentionally adopted and used the Accused Mark, copying the identical wording of Plaintiffs' Coffee Trademark in connection with directly competing coffee products and substantially similar veteran-focused charitable initiatives.

91. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered, or is likely to suffer, injury to their Coffee Trademark rights, goodwill, and commercial interests.

92. Defendants' continued infringement threatens further injury to Plaintiffs and the consuming public.

**COUNT II — FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION**
**15 U.S.C § 1125(a)**

Under the Lanham Act, section 43(a), 15 U.S.C. § 1125(a),

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely tobe damaged by such act.

93. Plaintiffs repeat and reallege paragraphs 1–81 as though fully restated herein.

94. Plaintiffs possess protectable trademark rights in the Coffee Trademark through federal registration and use in commerce. Defendants' Accused Mark is identical to the Coffee Trademark in wording, font, and commercial impression.

95. Defendants have used the Accused Mark in commerce in connection with its coffee

products.

96. Defendants' use of the Accused Mark is likely to cause forward and/or reverse confusion, mistake, or deception regarding the origin, sponsorship, affiliation, association, or approval of the parties' coffee products.

97. Defendants' conduct constitutes false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

98. Defendants' conduct has caused, or is likely to cause, injury to Plaintiffs' commercial interests and goodwill.

99. Unless restrained, Defendants' infringing conduct is likely to continue.

**COUNT III — COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER ILLINOIS LAW**

100. Plaintiffs repeat and reallege paragraphs 1–81 as though fully restated herein.

101. Plaintiffs possess protectable trademark rights in the Coffee Trademark through prior use in commerce and the goodwill associated with that use.

102. Defendants have used the Accused Mark in connection with the marketing, promotion, distribution, and sale of coffee products in Illinois.

103. Defendants' use of the Accused Mark is likely to cause confusion concerning the source, sponsorship, affiliation, or approval of Defendants' goods.

104. Defendants' conduct constitutes trademark infringement and unfair competition under Illinois common law.

105. Plaintiffs have suffered, or is likely to suffer, injury to their goodwill, reputation, and commercial interests as a direct and proximate result of Defendants' conduct.

106. Unless restrained, Defendants' conduct threatens further injury to Plaintiffs and the Illinois consuming public.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request the following relief:

A. A judgment that Defendants have infringed Plaintiffs' federally registered Coffee Trademark in violation of 15 U.S.C. § 1114;

B. A judgment that Defendants have engaged in false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a);

C. A judgment that Defendants have engaged in trademark infringement and unfair competition under Illinois common law;

D. Injunctive relief directing Defendants to cease all use of Plaintiffs' Coffee Trademark in the United States;

E. Injunctive relief directing Defendants to remove the Coffee Trademark in its entirety from Defendants' products, marketing materials, advertising, websites, and other product literature in the United States;

F. A monetary award of (1) Defendants' profits, (2) any damages sustained by Plaintiffs; and (3) the cost of the action pursuant to 15 U.S.C. § 1117(a).

G. An award to Plaintiffs of prejudgment interest from the date infringement began, post judgment interest, attorney's fees and expenses;

H. Such other relief that Plaintiffs are entitled to under law and equity, and any other and further relief that this Court or a jury may deem just and proper.

## JURY DEMAND

Plaintiffs' demand a trial by jury on all issues presented in this Complaint.

Respectfully submitted,

By: *<u>/s/Raymond P. Niro, Jr.</u>*

Raymond Pardo Niro, Jr.
Raymond P. Niro Law, LLC
155 North Wacker Drive, Suite 4250
Chicago, IL 60606
312-755-8576
rpn@nirolawfirm.com

Attorney for Plaintiffs, Brian Seebauer and Gun Barrel Coffee, Inc.

**Exhibits to Complaint**

Exhibit A – Examples of Hanx Worx LLC's Trademark Registrations

Exhibit B- DAMN GOOD COFFEE DAMN GOOD CAUSE Trademark Registration

Exhibit C- Yahoo article detailing Accused Mark's use

Exhibit D – Article and 08/18/25 Website capture showing approximate first time use of Accused Mark

Exhibit E- Defendant's Articles Discussing Expansion to Walmart, 7-Eleven, and Speedway

Exhibit F- Defendant's Store Locator

Exhibit G- Photos of Defendant's products sold at Walmart

Exhibit H –Defendant's Website

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2026, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Raymond P. Niro, Jr.*
Raymond P. Niro, Jr.
*Attorney for Plaintiffs*